**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 7 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JOE ROBERT FERRARO,

      Plaintiff-Appellant,

v.

BOARD OF TRUSTEES OF LABETTE
COUNTY MEDICAL CENTER;
RICHARD A. NYE,

      Defendants-Appellees.

No. 00-3261
(D.C. No. 98-CV-1291-JTM)
(District of Kansas)

---

**ORDER AND JUDGMENT**[*]

---

Before **SEYMOUR**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and **STAGG**, Senior District Judge.[**]

---

Joe Robert Ferraro, a registered nurse anesthetist, challenges the district court's

grant of summary judgment to Labette County Medical Center (LCMC) on his claim of

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable Tom Stagg, Senior District Judge for the United States District Court, Western District of Louisiana, sitting by designation.

the denial of procedural due process in his suspension of privileges. Mr. Ferraro contends the relief afforded by the hospital's post-termination review was incomplete because it did not include back pay, though his privileges were restored. We conclude Mr. Ferraro had no property interest in back pay; therefore, his claim must fail.

Mr. Ferraro is a non-physician health professional who administers anesthesia to patients during surgery and other procedures. He had privileges to practice at LCMC, a Kansas county hospital, for over twenty years prior to his suspension on August 16, 1996.

On two occasions in June 1995, registered nurses at LCMC reported seeing Mr. Ferraro treat patients in an unusual and ostensibly unprofessional way. The reports were forwarded to Dr. W.L. Dillon, LCMC's Chief of Surgery, and to Richard Nye, C.E.O. of LCMC at that time. Dr. Dillon, at Mr. Nye's direction, discussed the incidents with Mr. Ferraro on July 7, 1995. Mr. Ferraro was warned if the allegations were true, the behavior was inappropriate, and could not continue. Dr. Dillon suggested Mr. Ferraro avoid any future instances of behavior that could be construed as inappropriate.

On August 13, 1996, two nurses reported they saw Mr. Ferraro twice act in a way similar to the prior occasions. These reports were forwarded to Dr. Dillon and Mr. Nye. Dr. Dillon interviewed all the reporting nurses and took written statements from them. On August 16, 1996, LCMC's Chief of Staff, Dr. Asha Verma, delivered to Mr. Ferraro a letter suspending his privileges to practice anesthesia at LCMC. Dr. Verma did so

based on Mr. Nye's representations the Medical Staff Executive Committee had met and voted to summarily suspend Mr. Ferraro. No such meeting had taken place however.

On August 29, the Committee requested Mr. Ferraro's presence to discuss informally the allegations against him and to review the summary suspension. This meeting took place on September 10, and Mr. Ferraro was presented with excerpts of the written statements of his accusers. He was not provided with the names of the patients, their records, or the dates of the alleged improprieties. Mr. Ferraro denied any wrongdoing and refused to answer any questions without his attorney. As a result of the meeting, the Committee unanimously recommended the suspension continue and Mr. Ferraro obtain an evaluation through the impaired nursing program.

On October 8, Mr. Ferraro requested a Fair Hearing on his suspension. The hearing was scheduled for November 11, 1996, to be conducted in accordance with LCMC's bylaws. Mr. Ferraro requested and was granted a continuance, and the hearing finally began November 22, and was resumed on December 11 and 12. Mr. Ferraro was able to examine witnesses and present arguments.

On December 17, the hearing officer issued his report. He recommended Mr. Ferraro be reinstated with privileges, but found the suspension was not arbitrary, capricious, or irrational. Mr. Ferraro was reinstated.

Mr. Ferraro filed a complaint pursuant to 42 U.S.C. § 1983, alleging violations of substantive and procedural due process, as well as a violation of a liberty interest in his

professional reputation. The district court dismissed his claims against the individual defendants in July 1999, and on July 18, 2000, granted summary judgment in favor of LCMC on all counts. This appeal followed.

Mr. Ferraro asserts he is appealing the district court's decision on both procedural and substantive due process claims. The district court granted summary judgment on these claims on different grounds; specifically, the court rejected the substantive claim because Mr. Ferraro raised no issue of material fact whether LCMC's actions were "shocking to the conscience"–the standard for a substantive due process violation. Nowhere in his brief on appeal does Mr. Ferraro address this issue. Instead, he focuses entirely on the issue of whether his property rights were truly restored when his privileges were resumed without an award of back pay. This addresses only the district court's judgment on the procedural due process claim. Thus, because he presents no argument at all, we consider Mr. Ferraro's appeal on this point waived and consider only the procedural claim. Mr. Ferraro did not appeal the district court's decision on his liberty claim.

We review a district court's grant of summary judgment *de novo*. *Amro v. Boeing Co.*, 232 F.3d 790, 796 (10th Cir. 2000). The evidence is to be examined in a light most favorable to the nonmoving party. *Jurasek v. Utah State Hosp.*, 158 F.3d 506, 510 (10th Cir. 1998).

In reviewing the procedural due process claim initially, the district court noted, while the hospital claimed Mr. Ferraro was an independent contractor who could be terminated at will, it had at all times treated him as an employee with an interest in continued employment, granting him a hearing in accordance with the bylaws. The district court indicated this implied Mr. Ferraro could not be terminated without cause, and the court assumed, without deciding, Mr. Ferraro could not be removed without adequate due process.

The court went on to discuss the due process standards, specifically this Court's holdings in *Workman v. Jordan*, 32 F.3d 475 (10th Cir. 1994), and *Archuleta v. Colorado Dep't of Insts.,* 936 F.2d 483 (10th Cir. 1991). In those cases we refused to review the adequacy of the challenged procedures, holding the plaintiffs had suffered no property deprivation because post-deprivation procedures had restored the plaintiffs' rights. *Workman,* 32 F.3d at 479; *Archuleta,* 936 F.2d at 489-90. Thus, the district court held the post-deprivation proceedings here, which restored Mr. Ferraro's privileges, made the review of the procedures unnecessary.

Mr. Ferraro claims the district court's analysis is in error because the post-deprivation proceedings did not restore his entire property interest, that is, he was not awarded back pay. He points out in both *Archuleta* and *Workman* the post-deprivation remedy included not just reinstatement, but awards of back pay. He cites similar cases from other jurisdictions for the principle back pay is a key component of adequate post-

deprivation relief. *See Gearhart v. Thorne*, 768 F.2d 1072, 1073 (9th Cir. 1985) (per curiam); *Johnson v. San Jacinto Jr. Coll.,* 498 F. Supp. 555, 571 (S.D. Tex. 1980). Thus, he urges both of our cases are distinct from his own, and he has not been adequately protected by the post-deprivation hearing awarded him by LCMC. Consequently, he contends the district court is obligated to take up his procedural claim in trial.

Yet, we are convinced Mr. Ferraro's claim to back wages is without foundation. The record makes clear Mr. Ferraro is a fee-for-service-provider; he is not an employee of LCMC. He performs anesthesia services at LCMC for patients, not for the hospital itself. His earnings are not regular wages, but are set by the number, type, and duration of anesthesia services he provides. While his fees are collected by the hospital and delivered to him by LCMC (a service for which he pays the hospital), he is paid for his services by the patients or their insurers. The hospital cannot force Mr. Ferraro to provide services to its patients, and patients are free to choose among service providers, so long as they have privileges at LCMC.

Mr. Ferraro's case is most similar to the decisions in *Kenyon v. Jennings*, 560 F. Supp. 878 (D. Kan. 1983), and *Piecknick v. Commonwealth*, 36 F.3d 1250 (3d Cir. 1994). In these cases independent contractors sued for loss when the government bodies in question utilized the services of other contractors, or did not utilize the services at all. Like the plaintiffs in those cases, Mr. Ferraro had no property rights arising from his independent contractor relationship. Indeed, Mr. Ferraro's privileges at the hospital only

provided him a venue and an opportunity to earn income, not a guarantee of income. Because those rights were fully restored by the post-deprivation hearing, the district court's summary judgment decision was correct.

Although Mr. Ferraro would avoid this conclusion on the hypothesis he receives his checks and his assignments from the hospital, not from patients or insurers, he fails to acknowledge the source of his income is not the hospital. He repeatedly contends LCMC is his only source of income, but that is a mischaracterization of the record which begs the issue. At best, LCMC can be regarded as an agent for collection, and to the extent part of the agency duties involved the receipt of funds later transferred to Mr. Ferraro, the hospital may be considered a remitter of money. That service, however, did not create an employer-employee relationship. Nor does his claim that he has drawn his entire income from his work at LCMC for several years alter the situation.

Although Mr. Ferraro may be economically dependent on practicing his craft at LCMC, that is a situation of his own making. His income still depends on the types of services he provides, and his compensation still is supplied directly by or through the patients he serves.

Thus, even though Mr. Ferraro was considered by the district court as an "employee" for part of its determination, that aspect of the court's disposition did not create a property claim for lost wages. To the extent Mr. Ferraro had a recognizable property

interest, it was fully restored in the post-deprivation proceeding.  The judgment of the

district court is **AFFIRMED**.


ENTERED FOR THE COURT


John C. Porfilio
Senior Circuit Judge